| | |
|---|---|
| DAVIDOFF HUTCHER & CITRON, LLP<br>*Proposed Attorneys for the Debtors*<br>120 Bloomingdale Road, Suite 100<br>White Plains, New York 10605<br>(914) 381-7400<br>Robert L. Rattet, Esq.<br>Jonathan S. Pasternak, Esq. | *Hearing Date*:<br>October 19, 2023<br><br>*Hearing Time*:<br>10:00 a.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:

BALADE YOUR WAY, INC., ET Al.[1]　　　　　　　　Lead Case No. 23-11384 (DSJ)
　　　　　　　　　　　　　　　　　　　　　　　　(Jointly Administered)


　　　　　　　　　Debtors.
------------------------------------------------------------------------X

**MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 363 AND
RULES 4001(b), 4001(d) AND 9014 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE FOR ORDER (A) AUTHORIZING
DEBTORS' USE OF CASH COLLATERAL AND PROVIDING
ADEQUATE PROTECTION, (B) APPROVING ORDER
AUTHORIZING USE OF CASH COLLATERAL, AND (C)
<u>SCHEDULING A FINAL HEARING</u>**

**TO: THE HONORABLE DAVID S. JONES:**

　　　　Balade Your Way, Inc. and Great Caterers LLC, the above captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), by their proposed undersigned counsel, Davidoff Hutcher & Citron LLP, hereby move (the "<u>Motion</u>") pursuant to sections 105, 361, 362 and 363 of Title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), Rules 4001(b), 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Local Rule 4001-2, seeking, <u>inter alia</u>, entry of an interim order authorizing and approving the Debtors' use of cash collateral in the ordinary course of their business affairs in accordance with the proposed budget annexed to this Motion; (ii) the Debtors' provision of

---

[1] Jointly administered with Great Caters LLC (Tax ID No. **-***8508), Case No. 23-11383 (DSJ).

adequate protection to the United States Small Business Administration (the "SBA") the Debtors' senior prepetition lender, and other junior asserted secured creditors, in consideration for the use of cash collateral; and (iii) scheduling a final hearing (the "Final Hearing") on the Motion to consider entry of a final cash collateral order. In support of the Motion, the Debtors respectfully refer to and incorporate the contents of the declaration of Roland Semaan, pursuant to 28 U.S.C. §1746 and Local Rule 1007-2, dated September 7, 2023 (the "Semaan Declaration"), submitted in support of, among other things, the relief sought by the Motion, and further respectfully set forth and state as follows:

## PRELIMINARY STATEMENT

The Debtors each operate restaurants in New York City. In furtherance of the Debtors' business and in response to the Covid-Pandemic, in or around June 2020, the SBA, the Debtors' senior secured lender, provided the Debtors with EIDL loans for $150,000 each, and holds a lien on substantially all the Debtors' assets, including their cash, accounts, personal property and cash equivalents, which property constitutes cash collateral within the meaning of Section 363 of the Code. The Debtors require the use of the SBA's and other junior creditors' Cash Collateral (as defined below) on a continued basis to pay ordinary operating expenses relating to their business, including among other things, payroll, taxes and payments to ordinary course service providers and vendors. The Debtors seek entry of an interim order authorizing use of cash collateral, annexed hereto as Exhibit "A". By this motion, the Debtors seek Court approval of the proposed order, upon sufficient notice to parties in interest.

## JURISDICTION

1.  This Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

2.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.  Venue of this proceeding and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory predicate for the relief requested herein is sections 105, 361, 362 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b), 4001(d) and 9014.

## BACKGROUND

### A. The Bankruptcy Cases

5.  On August 30, 2023 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under Subchapter V of Chapter 11 of the U.S. Bankruptcy Code, Title 11 and have been maintained in possession of their property and management of their business. The Debtors have, with certain unimportant exceptions, all the duties of a trustee. See, e.g. 11 U.S.C. §§1107 and 1108.

### B. The Debtors' Business

6.  The debtor, Balade Your Way, Inc., operates a restaurant located 144 West 37th Street New York, NY 10018. The debtor, Great Caterers LLC, operates a restaurant located at 208 First Avenue New York, NY 10009.

7.  As a result of the non-essential determination for the Debtors' business operations during the Pandemic shut-down in New York, the Debtors' business ceased nearly overnight. Various counterparties and creditors provided relief and assistance where possible, but the operations never achieved a full recovery to pre-pandemic levels in New York. Each of the

Debtors obtained relief from the government assistance programs offered to small businesses during the Pandemic. However, unforgiven EIDL loans still remain obligations of the Debtors. Overall, the accumulated debt for the Debtors was overwhelming.

8.     The Debtors tried to enroll in the Restaurant Revitalization Fund enacted by the United States Small Business Administration, and although the Debtors were one of the first few restaurants to apply for this relief, the Debtors never received any assistance.

9.     In order to cover losses in the operations, additionally, the Debtors entered into several merchant cash advance agreements to be able to generate more income to cover the operating expenses. Unfortunately, the cash flow was not sufficient to pay all of these lenders.

10.    The Debtors' chapter 11 filings were precipitated in large part by the Covid-19 crisis, forcing a complete and later partial cessation of their operations for a substantial amount of time, then further exacerbated by several onerous agreements with merchant cash advance lenders.

    **C.**    **Capital Structure – Debt**

11.    Prior to the Petition Date, in or around June 2020 and in response to the Covid-19 Pandemic, the Debtors obtained various EIDL loans with the SBA (the "Note"), whereby the SBA initially loaned the principal sum of approximately $150,000 to each debtor which obligation was secured pursuant to, inter alia, various security agreements executed sometime in or around June 2020 as well (collectively, the "Security Agreements"). On March 10, 2022, Balade Your Way, Inc. extended its loan with the SBA to $2,000,000. On April 8, 2022, Great Caterers LLC also extended its loan with the SBA to $2,000,000.

12.    The Security Agreements, among other things, granted to the SBA a security interest in all of the Debtors' assets, specifically but not limited to, all personal and fixture

4

property of every kind and nature including, without limitation, all furniture, fixtures, equipment, raw materials, inventory, other goods, accounts, contract rights, rights to payment of money, insurance refund claims and all other insurance claims and proceeds, tort claims, chattel paper, electronic chattel paper, documents, instruments, securities and other investment property, deposit accounts, rights to proceeds of letters of credit, supporting obligations of every nature, and general intangibles (the "Cash Collateral"). The SBA's security interest in the Cash Collateral was perfected pursuant to a UCC-1 Financing Statement filed on Balade Your Way, Inc. on June 17, 2020 [2] (the "UCC-1s" together with the Note, the Security Agreement and any and all documents executed in connection and in support thereof shall collectively be referred herein as the "Loan Documents"). Copies of the Loan Documents are annexed hereto as Exhibit "B".

13.    The Debtors acknowledge on behalf of themselves that pursuant to the Loan Documents, the SBA holds a first priority perfected security interest in the Collateral to secure the Debtors' indebtedness to the SBA under the Loan Documents (collectively, the "Pre-Petition Liens"), not subject to any offset, claim or defense by the Debtors.

14.    As of the Petition Date, the Debtors acknowledge and agree on behalf of themselves that they owe the SBA not less than the amount of $2,000,000 each plus interest, costs, fees, attorneys' fees and other charges pursuant to the Loan Documents which continue to accrue (the "Claim"), and the Debtors acknowledge that the Claim constitutes an allowed claim against the Debtors' estate, not subject to any offset, claim or defense by the Debtors.

15.    Prior to the Petition Date, the New York State Department of Taxation and Finance ("NYSDTF") filed tax warrants against debtor Great Caters LLC in relation to

---

[2] Although Great Caterers LLC entered into a loan with the SBA for $150,000 and then extended it to $2,000,000, the SBA appears to not have filed a UCC-1 financing statement on Great Caterers LLC.

5

approximately $200,000.00 in unpaid sales tax for March 2020 and March 2021. As a result of these warrants, the Debtors believe that NYSDTF also has an interest in cash collateral.

16.     The Debtors acknowledge on behalf of themselves and not on behalf of any creditors or other parties in interest that sometime thereafter the Debtors' agreement with the SBA, multiple merchant cash advance lenders (the "Other Secured Parties"), who the Debtors made further agreements with, filed their own UCC-1 financing statements on the Debtors. However, the Debtors do not believe the liens of the merchant cash advance lenders are valid and/or perfected and/or constitute an interest in cash collateral.

## THE DEBTORS' NEED FOR USE OF CASH COLLATERAL

17.     The Debtors require the use of cash collateral in order to pay ordinary and necessary business expenses including, but not limited to, payroll and related obligations, utilities, amounts owed to vendors and other suppliers of goods and services, insurance and other expenses that are critical to the operational needs of the Debtors' business.

## RELIEF REQUESTED

18.     By this Cash Collateral Motion, the Debtors respectfully request, pursuant to sections 105, 361, 362, and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b), 4001(d) and 9014 the entry of a Final Order, inter alia: (i) authorizing the Debtor to utilize Cash Collateral in accordance with the terms of an approved budget and grant adequate protection the SBA, NYSDTF and the Other Secured Parties; (ii) modifying the automatic stay; and (iii) scheduling a final hearing(s) pursuant to Bankruptcy Rule 4001(b).

## AUTHORITY FOR USE OF CASH COLLATERAL

19.     A debtor-in-possession or trustee may be authorized pursuant to court order, to use cash collateral in the ordinary course of its business operations under sections 363(c) and

6

1107 of the Bankruptcy Court. This Court may condition such use, pursuant to section 363(e) of the Bankruptcy Code as is necessary to provide adequate protection of any interest held therein by any entity other than the debtor in possession.

20. Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. *See In re Realty Southwest Assoc.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); 3 Collier on Bankruptcy 363.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006); *see also In re Dynaco*, 162 B.R. 389, 396; *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa. 1982). Bankruptcy Rule 4001(b) governs authorization for utilizing cash collateral and provides that the court may permit a trustee to use cash collateral prior to a final hearing to the extent necessary to avoid immediate and irreparable harm. After a final hearing held on at least fourteen days' notice, the court may grant the authority to use cash collateral on a permanent basis and other permanent relief requested herein.

21. A debtor-in-possession or trustee may not use cash collateral unless "(A) each entity that has an interest in such collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

22. The Debtors have determined, in the exercise of their business judgment, with the assistance of their advisors, that the Debtors require the use of cash collateral. The Debtors have an immediate and critical need to use cash collateral to pay, in accordance with the Budget, various parties in the ordinary course of business and/or as authorized by the Court. Among other things, the continued use of Cash Collateral will enable the Debtors to continue to operate their business, maintain relationships with their vendors and creditors, pay their employees, and

7

satisfy other ordinary operational costs that are essential to preserve estate value by continuing to operate their business in the ordinary course. In the absence of the continued authorization to use Cash Collateral, the Debtors' ability to operate their business will be jeopardized, causing immediate and irreparable harm to their estate, creditors, employees, and all other stakeholders by the loss of significant revenue. Thus, the Debtors' continued use of Cash Collateral is essential to enable the Debtors to meet the obligations of their ordinary operating costs and expenses during the pendency of the Chapter 11 Cases.

### A. Adequate Protection

23. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Permissible forms of adequate protection include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. The purpose of adequate protection is to protect a secured creditor from diminution in the value of its property interest in its collateral during the period of use, sale, or lease. *In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *see also Delbridge v. Production Credit Assoc. and Fed. Land Bank*, 104 B.R. 824, 827-28 (E.D. Mich. 1989); *In re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990). The appropriate form of adequate protection must be determined on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985).

24. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of SBA, NYSDTF, and the Other Secured Parties in Cash Collateral to the extent of any diminution in value of their interests in the Prepetition Collateral (including the

Cash Collateral) resulting from the use of Cash Collateral, the authorized use, sale or lease of Prepetition Collateral, and the imposition of the automatic stay (collectively, the "Diminution in Value") pursuant to sections 361, 362, and 363 of the Bankruptcy Code, the Debtors propose to grant to the SBA, NYSDTF and the Other Secured Parties the following adequate protection:

        i.    Replacement Liens. Pursuant to sections 361 and 363(e) of the Bankruptcy Code, the SBA and NYSDTF are hereby granted valid, perfected and enforceable post-petition replacement liens on and security interests in all assets of the Debtors and the proceeds thereof (the "Replacement Liens") in the continuing order and priority that existed as of the Petition Date and without a determination as to the nature, extent, and validity of such liens, and subject to: (i) United States Trustee fees pursuant to 28 U.S.C. Section 1930, together with interest, if any, pursuant to 31 U.S.C. Section 3717 and any Clerk's filing fees; (ii) the fees of Chapter 11 professionals to the extent allowed pursuant to 11 U.S.C. Section 330 or 331 of the Code; and (iii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed $10,000 (the "Carve-Out"). The Replacement Liens shall not attach to or be enforceable against any avoidance powers, actions and any proceeds thereof held by the Debtors or any trustee for the Debtors, including those pursuant to the avoidance powers set forth in §§ 544, 547, 548, and 550 of the Bankruptcy Code. Furthermore, each of the Debtors shall make monthly adequate protection payments under their respective EIDL loans with the SBA at $5,000 a month during the Chapter 11 Cases. The Debtors shall also make monthly adequate protection payments to NYSDTF in the amount of $2,000 a month during the Chapter 11 Cases.

    In addition to the Replacement Liens granted to the SBA and NYSDTF above, the Debtors hereby grant replacement liens to the Other Secured Parties and any other party who filed prior to the Petition Date a UCC-1 financing statement against the Debtors with the

9

Secretary Of the State of New York, with such Replacement Liens to continue in the same order and priority that existed as of the Petition Date without determination as to the nature, extent, priority and validity of same, and shall not attach or be enforceable against any avoidance actions.

          ii.    <u>Superpriority Claim</u>. As additional adequate protection for the Debtors' use of Cash Collateral pursuant to Sections 503 and 507 of the Bankruptcy Code, the SBA and NYSDTF shall be granted a superpriority administrative claim, to the extent of any post-Petition Date diminution in value of its Collateral arising from the Debtors' use of the Cash Collateral (the "<u>Superpriority Claim</u>"). The Superpriority Claim shall have priority over all other administrative expense claims and unsecured claims against the Debtors' estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to Bankruptcy Code §§ 105, 326, 328, 330, 331, 364, 365, 503(a), 506(c), 507(a), 507(b), 546(d), 726, 1113 and 1114, subject to the Carve-Out.

25.    Based on the foregoing, the Debtors respectfully submit that the Replacement Liens will sufficiently protect the SBA's, NYSDTF's, and the Other Secured Parties' interests in the Cash Collateral from any diminution in value, are permissible under the Bankruptcy Code, and should be approved.

    **B.**    **<u>Budget</u>**

26.    In connection with its emergency motion, the Debtors have prepared a long-term budget (the "<u>Budget</u>"), which identifies anticipated receipts and disbursements over the anticipated duration of the Chapter 11 cases including the next thirteen (13) weeks. A copy of the Budget is annexed hereto as <u>Exhibit "C"</u>. The Debtors believe, but do not warrant, the Budget

will be adequate, considering all available assets, to pay all operating administrative expenses due or accruing during the period covered by the Budget, and a substantial portion of professional expenses.

27. The Debtors will provide a line item in the Budget for Subchapter V Trustee fees of $2,000 per month until the month that the plan is filed and $1,000 per month during the pendency of the case. The Debtors are required, on a monthly basis, to set aside the monthly budget amount in Debtors' counsel's trust account. The distribution of the proceeds of those funds will be subject to further order of the court and binding on all parties. The SBA, NYSDTF, the Other Secured Parties, the Debtors, and the Subchapter V Trustee are reserving all their rights hereunder.

### C.     Termination

28. The Debtors shall be entitled to use Cash Collateral in accordance with the Budget, effective upon entry of the proposed interim order through the day that is one-day after the date on which the Court schedules the Final Hearing (the "Termination Date").

### D.     The Automatic Stay Should Be Modified on a Limited Basis

29. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to grant the security interests and liens, described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.

30. Stay modifications of this kind are ordinary and standard features of cash collateral motions, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

11

### E.     Final Approval Should Be Granted

31. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after the service of such motion.

32. Pursuant to Bankruptcy Rule 4001(b), the Debtors requests that the Court conduct a final hearing on this motion and (i) authorize the Debtors to use Cash Collateral on a final basis in accordance with the Budget, pending entry of the interim order, in order to (a) maintain ongoing operations of the Debtors (b) fund the administration of the Bankruptcy Case; and (c) avoid immediate and irreparable harm and prejudice to the Debtors' estate, business operations and all parties in interest, and (ii) schedule the Final Hearing.

33. The Debtors have an urgent and immediate need for cash to continue to operate. Currently, the Debtors do not have sufficient unencumbered funds with which to operate their business and in fact, all funds are the SBA's Cash Collateral. Absent authorization from the Court to use Cash Collateral, as requested, pending the Final Hearing, the Debtors will be immediately and irreparably harmed. The ability to use Cash Collateral will allow the Debtors to continue ordinary course operations. The Debtors' inability to fund their operations and fund its payroll would have a disastrous effect on the value of the Debtors' Estate to the detriment of all parties in interest. Accordingly, the relief requested is critical to preserving the Debtors' ability to reorganize their affairs through a plan.

### NOTICE OF FINAL HEARING

34. Notice of this Motion and proposed interim order was given by email or overnight delivery of a copy to (i) the SBA, (ii) the NYSDTF, (iii) the Office of the United States Trustee for the Southern District of New York, Attn: Andrea Schwartz, Esq., Trial Attorney, One

Bowling Green, Room 534, New York, New York 10004, (iv) The Subchapter V Trustee, Heidi Sorvino, (v) each of the Debtors' known or asserted secured creditors, (vi) each of the Debtor's twenty (20) largest unsecured creditors, and (vii) all parties that have filed notices of appearance in these Chapter 11 cases (collectively, the "Notice Parties"). In light of the nature of the relief requested herein, the Debtors submit that no other or further notice need be given.

## NO PRIOR REQUEST

35. No previous request for the relief sought in this Cash Collateral Motion has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of the interim order, scheduling of a Final Hearing, and such other and further relief as this Court deems just.

Dated:  White Plains, New York
        September 21, 2023

>                   DAVIDOFF HUTCHER & CITRON LLP
>                   *Proposed Attorneys for the Debtors*
>                   120 Bloomingdale Road, Suite 100
>                   White Plains, New York 10605
>                   (212) 557-7200
>
>
>                   By: */s/ Jonathan S. Pasternak*
>                       Jonathan S. Pasternak

13