Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 23-11384-DSJ

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    BALADE YOUR WAY. INC.,

8

9          Debtor.

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                    United States Bankruptcy Court

13                    One Bowling Green

14                    New York, NY  10004

15

16                    June 10, 2024

17                    10:02 AM

18

19

20

21   B E F O R E :

22   HON DAVID S. JONES

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   UNKNOWN

1    HEARING re 1) Continued Case Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 3

1    A P P E A R A N C E S :

2

3    OFFICE OF THE NYS ATTORNEY GENERAL

4         Attorneys for NYS Department of Taxation and Finance

5         28 Liberty Street

6         New York, NY 10005

7

8    BY:   LEO V. GAGION

9          VALENTINA VLASOVA

10

11   DAVIDOFF HUTCHER & CITRON LLP

12         Attorneys for the Debtor

13         605 Third Avenue

14         New York, NY 10158

15

16   BY:   JONATHAN S. PASTERNAK

17

18   WHITE AND WILLIAMS LLP

19         Trustee

20         7 Times Square, 29th Floor

21         New York, NY 10036

22

23   BY:   HEIDI J. SORVINO

24

25

Page 4

1   New York State Attorney General

2         Attorneys for NYS Department of Taxation

3         28 Liberty Street

4         New York, NY 10005

5

6   BY:  ENID NAGLER STUART

7

8   ALSO PRESENT TELEPHONICALLY:

9   LEE KLINGER

10  RONALD SEMAAN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        P R O C E E D I N G S

2              THE COURT:  Good morning, everyone.  It's Judge

3      Jones here for a 10:00 a.m. hearing or continued conference

4      in Balade Your Way.  We've got all the appearances through

5      the advance sign-in process so I have entered an order and I

6      had some prior proceedings about the need for information

7      concerning questions that arose about some financial

8      matters.  And so, I know we have Mr. Semaan and Mr. Klinger.

9      Welcome to you.

10             Let me I guess start -- let Mr. Pasternak lead us

11     off with an update and I'll just circle the room and then

12     take it from there.

13             MR. PASTERNAK:  Thank you, Your Honor.  Jonathan

14     Pasternak, Davidoff Hutcher & Citron, attorneys for the

15     Debtors.  I also have in my office my associate Max DuVal

16     who's been working on these matters from inception.

17             On -- last week, when the order was entered and it

18     required the Debtor by last Friday I believe to submit the

19     Dropbox file and -- I guess we had the hearing last

20     Thursday, Your Honor.  Literally within an hour after the

21     hearing, the Dropbox was delivered.  So, that's the first

22     thing that was accomplished.

23             Since that time and consistent with the order that

24     Your Honor entered, there were additional bank statements

25     delivered to the parties, specifically --

Page 6

1          THE COURT:  I'm sorry.  Mr. Pasternak, let me jump

2     in.  I think you're off a week because the sequence was the

3     week before last -- whatever day the conference was, we had

4     a direction that information be provided by the end of the

5     week and then last week, which was the week of June 3rd, was

6     -- Mr. Semaan and Mr. Klinger were to be available for

7     depositions if the U.S. Trustee's Office or the U.S.

8     Attorney's Office wanted.  But their -- those offices'

9     option, they could do that later if they wanted to have more

10    time with the documents so.

11          MR. PASTERNAK:  Yeah.  I apologize.  I'm off on my

12    timing.  Things are moving so fast and time is flying by.

13    But literally, the afternoon of the hearing, we provided the

14    Dropbox.  Last -- and the U.S. Trustee specifically -- and

15    asked for the pre-petition 2023 bank statements for both

16    Debtors.  Those were delivered last week.

17          The U.S. Trustee is still -- you know, not ready

18    to but we'll hear from Ms. Schwartz as to when they want to

19    make those depositions.  But, again, the Debtors' principal,

20    the accountant, are standing by when the U.S. Trustee is

21    ready forward with that.

22          As is consistent with the order, there one or two

23    other types of documents that were still being requested for

24    finalized.  We're down to I think two open documentary

25    items, Your Honor.  Number one, the accountant had located

1   two other pre-petition accounts of the Debtors that were

2   held at Chase.  The statements were ordered and they should

3   imminently available if not already.  We'll hear from Mr.

4   Klinger as to whether -- or Mr. Semaan -- whether they have

5   now arrived and as soon as they do, obviously, they'll be

6   turned over.

7            And then finally, the 2022 tax return needs to be

8   finalized and signed.  I don't believe -- I believe all of

9   the work has been done on the return.  Again, we can hear

10  from the others, but at this point, I think that that could

11  be signed and filed this week.

12           THE COURT:  Who signs it?

13           MR. PASTERNAK:  That's a good question, Your

14  Honor.  We know from Ms. Schwartz that Lee Klinger's

15  signature has appeared on a prior draft.  I don't know --

16  I'm not an accountant so maybe Mr. Klinger can answer better

17  if one or both signs.  I'm not sure of the answer.  If

18  you're --

19           THE COURT:  Okay.

20           MR. PASTERNAK:  Would you like that answer?

21           THE COURT:  No, no.  Let's just -- it's fine.

22  I'll -- I think I'll stick with attorneys for now just to be

23  safe and protective of everybody's rights and then we'll

24  take it from there.

25           Okay.  So, basically to recap, I guess you're

1    telling me that after the prior order which followed an

2    earlier order where information wasn't produced as -- by the

3    date required, you've provided all the information available

4    quickly.  You're providing additional information and the

5    depositions that were contemplated haven't yet occurred.

6    But I guess you're -- you didn't say this but I assume

7    remain available when sought.  Yes?

8            MR. PASTERNAK:  Yes, of course, Your Honor.  And

9    I'd like to continue with other developments if I may.

10            THE COURT:  Yes.  Okay.

11            MR. PASTERNAK:  Thank you so much.  So, over these

12    past two weeks, in addition to providing documents and

13    getting the other remaining items delivered, the Debtor's

14    been in negotiations with the -- with Mr. Stein on behalf of

15    the SBA.  I don't know how specific I should be about the

16    settlement proposal because it's obviously subject -- since

17    it's not completed yet, it is still subject --

18            THE COURT:  Yeah.  Don't put terms on the record

19    is my preference.  Then I think --

20            MR. PASTERNAK:  We haven't finalized the

21    settlement.  What I'd feel comfortable in saying, Your

22    Honor, is that the Debtor approached the SBA to resolve all

23    issues regarding these Chapter 11 cases and the two SBA EIDL

24    loans made to the Debtor.  And I would say that the Debtor

25    and the SBA are in continuing negotiations.  I'm hopeful

Page 9

1    those negotiations will result in what I will tell you is

2    part two of what has been happening over the last week or

3    two.

4              And I'll transition into that, Your Honor.  So,

5    the Debtors have been in discussion with Ms. Sorvino and

6    have come up with a proposal to her that would in essence

7    withdraw the plan that was confirmed, would permit the

8    Debtor to modify or amend the existing schedules and

9    statement of affairs to more accurately reflect transfers

10   that would fit into the periods of time and the schedules

11   and the statement of affairs as well as any other transfers

12   outsides of those periods that Ms. Sorvino believes are

13   material or relevant to the Chapter 11 cases.

14             We would then -- we would -- we then asked Ms.

15   Sorvino once we do that to reevaluate and help the Debtor

16   formulate a more fair and equitable plan for all Creditors

17   based on two things.  Number one, the results of those

18   amendments and two, the results of whatever settlement and

19   settlement payments will be forthcoming to the SBA under the

20   plan and that subject to -- strictly subject to condition

21   upon Ms. Sorvino's recommendation of whatever plan is

22   proposed or agreed to, we would then seek to, as I said,

23   withdraw the existing order of confirmation -- the prior

24   plan -- and then file a modified plan and seek to go through

25   the proper procedure to confirm that plan.

Page 10

1              THE COURT:  Okay.  In your view, is anything

2      happening now under the confirmed plan that's going to

3      complicate the effort you just described to sort of

4      recalibrate?

5              MR. PASTERNAK:  I wouldn't say complicate but

6      there will have to be considerations for whatever plan

7      distributions have already been made.  Now, the plan

8      distributions to the unsecureds have been fairly modest

9      because I think it was only a 1 percent dividend in year

10     one.  But like, for example, with the SBA, that was more of

11     a significant number.  But, again, we can build that into --

12     assuming we can get the SBA to agree to a settlement -- into

13     the modified repayment terms that the SBA and the Debtor end

14     of agreeing to.

15             So, I don't think it's anything -- and then we can

16     take a credit under the plan.  For example, if the new plan

17     required more payments to the unsecured Creditors, they

18     would obviously get a credit for the 1 percent dividend

19     they've already received.

20             THE COURT:  Okay.  Yeah.  Just to speak in

21     familiar cliches, basically, I want to make sure the eggs

22     aren't being scrambled now from this point forward in a way

23     that can't be unscrambled between now and whenever you

24     accomplish the --

25             MR. PASTERNAK:  That's the only other thing, Your

Page 11

1    Honor.  These are -- remember, there's no transfer of assets

2    under the plan.  This is a straight forward bootstrap plan

3    where the Debtor just continues an existence, is paying its

4    bills, and nothing needs to be undone of any material

5    nature.

6               THE COURT:  Okay.  All right.  Let me hear from

7    Ms. Sorvino.  I guess everyone here knows but in case

8    somebody unfamiliar with the case ever ends up reading this

9    transcript, Ms. Sorvino's the subchapter 5 trustee.  That's

10   an invaluable role in any subchapter 5 case and she's an

11   invaluable player here.  So, Ms. Sorvino, anything you want

12   to add?

13              MS. SORVINO:  Thank you, Your Honor.  Heidi

14   Sorvino, subchapter 5 trustee.  Good afternoon from London.

15              THE COURT:  Oh, lucky you.

16              MS. SORVINO:  I'm here at TMA Euro.  It's a great

17   group who've come from the U.S.  It's really been a very

18   interesting conference and I'm speaking not on sub 5 but on

19   other stuff.

20              So, I have spoken to Mr. Pasternak.  I am on board

21   with what he laid out in terms of withdrawing the plan,

22   coming up with a new plan, and working with the Debtors on

23   formulating what is correct in light of all the new

24   information and what the documents provide.

25              So, I have no problems being a facilitator,

Page 12

1    assisting the Debtor and helping in that role.  I just --

2    you know, this is all obviously -- nothing's been done.

3    We're waiting to hear on what SBA says on the offer from the

4    Debtors, and none of that has been resolved.

5              But I -- as Mr. Pasternak knows -- I have offered

6    my services.  I will help them, assist them, facilitate with

7    any Creditor with any issue.  So, I am here and available.

8              THE COURT:  Thank you.  All right.  Let me hear

9    from Mr. Stein with the U.S. Attorney's Office for the SBA.

10             MR. STEIN:  Morning, Your Honor.

11             Your Honor, to the extent that Mr. Pasternak gave

12   the impression that there are -- sort of there's an ongoing

13   dialog, I think that that is a mischaracterization.  There's

14   not so far dialog related to settlement in the sense of a

15   back and forth.  We're anywhere near some potential

16   resolution.

17             What happened was, Mr. Pasternak called me.  He

18   said the Debtor would like to resolve or purse a resolution.

19   I emailed him back and said the SBA is not opposed in

20   principle, though we need to know what the offer is.  We

21   don't even know what the offer is at this point.

22             So, I don't want Your Honor to have the

23   misimpression that, you know, there've been a lot of

24   conversations, we're talking terms, and we're somewhere

25   close to a resolution.  The SBA doesn't even know what's on

Page 13

1    the table at this point, and we've asked for -- you know, if

2    they're going to make a proposal, let us know what it is.

3            So, we have indicated that we're not opposed in

4    principle, but we haven't taken any position.  We don't even

5    know the details.  So, I just want to make that clear.  And

6    I think that's all I have to say at this moment.

7            THE COURT:  Okay.  I'll just --

8            MR. PASTERNAK:  Your Honor, can I briefly respond

9    because I didn't compete my (indiscernible).  To be fair to

10   Mr. Stein, the last conversation we had was exactly as Mr.

11   Stein put it.  So, he put it back on the Debtor, obviously,

12   whose obligation it is to make a formal proposal and that is

13   being -- and since we've had that call last week, the

14   Debtor's been feverishly working on making that proposal and

15   I expect it to be made this week.  Thank you, Judge.

16           THE COURT:  Okay.  Yeah.  I mean, I -- look, it's

17   a concerning situation and the fact that there's a confirmed

18   plan out there and that this is being done after the fact in

19   trying to correct things and straighten them out means it

20   has to happen fast.  So, I think you appreciate that.  I'm

21   saying it out loud partly so clients hear it directly from

22   the Court and it's -- certainly something that can't

23   languish.  So, I'm glad to hear you're jumping on it.

24           It strikes me that for really particularly SBA to

25   evaluate a proposal, they're also going to need facts which

Page 14

```
 1    are still coming out.  So, I -- everyone has to work fast.

 2    But that makes sense to me.

 3            Let me hear from Ms. Schwartz from having heard

 4    from everybody else.

 5            MS. SCHWARTZ:  Thank you, Your Honor.

 6            THE COURT:  Sorry, Mr. Gagion.  Everybody but Mr.

 7    Gagion.  Actually, before you get going, Mr. Gagion,

 8    anything you want to add or are you just observing today?

 9            MR. GAGION:  Just observing today, Your Honor.

10    Nothing to add.  Thank you.

11            THE COURT:  Okay.  Great.  Okay.  Go ahead, Ms.

12    Schwartz.  Sorry.

13            MS. SCHWARTZ:  Thank you, Your Honor.  Andrea

14    Schwartz for the United States Trustee.

15            We didn't know anything about the discussions or -

16    - with the sub 5 trustee until this morning.  I received an

17    email from the sub 5 trustee.  I haven't even had an

18    opportunity to speak with her, but I can say to Your Honor

19    that now -- you know, there are a few things.

20            We take a very different view of this situation

21    than has been presented so far.  First of all, if you think

22    about it just globally, Judge, you've got a confirmed plan

23    and you're a year into the bankruptcy case and now the

24    solution is, let's revoke the plan, amend the schedules that

25    were filed nearly a year ago, and do a new plan.
```

Page 15

1      I mean, we all know that bankruptcy is a place for

2  honest debtors to reorganize and I think some of the facts

3  that are coming out through the production of documents

4  would lead the Court and certainly is leading the U.S.

5  Trustee to believe otherwise.

6      It was on May 7th, Your Honor, that you held the

7  first conference in this case at which time we discussed the

8  concerns that we had over the tax return that revealed the

9  loan to shareholders with proceeds of an SBA loan.  And at

10  that conference, Your Honor, Mr. Pasternak, counsel for the

11  Debtor, told the Court he was surprised by that.  He hadn't

12  seen that and that he was investigating that as an officer

13  of the court.

14      Then the second conference we had with Your Honor

15  as on May 29th at which time we were advised that none of

16  the documents that were supposed to have been produced at

17  the May 7th hearing had been in fact produced.  And the

18  reason was, they didn't want to produce it piecemeal.  So,

19  that's why we got nothing.

20      So, that afternoon, we received a Dropbox with

21  documents that had been submitted to Mr. Pasternak from the

22  accountant.  In that Dropbox that we received were two loan

23  agreements, Judge.  Two loan agreements, each between the

24  principle and the company for loans to the principle, each

25  in the amount of $2 million with payments to start in 2024.

Page 16

1    We're also -- so, that supports the loan to shareholders

2    that was in the tax return that we had identified that

3    hadn't been disclosed anywhere in the case let alone the

4    schedules or the plan.

5            And then we received only on Wednesday of last

6    week other bank statements.  The fact that we're hearing

7    today that since May 7th, there's a bunch of other bank

8    statements that we still haven't gotten -- I mean, Your

9    Honor, I mean, at some point, you know, one has to look at

10   this and say, what's going on here.  It was on May 7th that

11   we brought all of this to the Court's attention.  Why

12   weren't all the bank statements immediately sent over?  Why

13   weren't all the documents -- I mean, why is it from May 7th,

14   now a month later, we're hearing, oh, and there's two more

15   bank accounts at Chase?

16           We also identified an Ameritrade account.  Why

17   don't we have any bank statements from the Ameritrade

18   account?  There are transfers from the bank statements to

19   Ameritrade by the Debtor.  It's very, very, very concerning

20   to us, Your Honor.

21           THE COURT:  Oh, sorry.  Go ahead.  I'm hoping

22   you're going to come around to, and therefore, we want to do

23   X.

24           MS. SCHWARTZ:  Yes.  I'm sorry.  But I thought it

25   was important to at least provide the Court with some of the

Page 17

1    facts that are starting to come to the (indiscernible).

2              So, we're at the point where we're still reviewing

3    the documents.  We're just learning about this idea of like

4    blowing up the plan, revoking the confirmation order,

5    revising schedules.  I mean, the question is, should be the

6    case even still be in bankruptcy.  Should these Debtors even

7    be receiving the benefit of the protections of bankruptcy?

8    Bankruptcy is for honest debtors to reorganize.

9              Now, post-confirmation, we're learning about all

10   these, frankly, inaccurate statements that were filed that

11   everybody's been relying on for a year.

12             THE COURT:  Right.

13             MS. SCHWARTZ:  So, we're at the point where we

14   need the additional bank statements.  We're going to send

15   them an additional bank accounts that we want the statements

16   for.  And the first deposition we're going to want to take

17   is of the accountant.

18             And so, we spoke this morning with Mr. Stein about

19   when we would schedule that, but now that I'm learning that

20   there are more bank statements, I think we've got to get the

21   rest of the documents.  It doesn't make sense to take the

22   deposition of the accountant who prepared these tax returns

23   without having the documents.

24             THE COURT:  Right.  Well, Mr. Pasternak says the

25   statement -- the remaining statements should be forthcoming

1   this week at latest and -- you know, at latest by the end of

2   this week, that is.

3          Look, I guess I don't have -- so, let me say a

4   couple things.  First, I am concerned about sort of the --

5   I'll just call it -- the situation generally, the -- what

6   seems to be a lack of complete disclosures in the initial

7   filing and run through of the case.  But, again, I'm not

8   making any concrete findings because I don't actually have

9   evidence yet.  I have a lot of smoke but not actual

10  evidence.

11         So, I'm awaiting appropriate proposals, whatever

12  they may be.  So, it might be revoke -- and I actually don't

13  want to articulate what they might be because I will mess

14  up.  But anybody can make any proposal they want based on

15  the facts.  I'm -- I think it makes sense for the

16  governmental officers to receive the information they're

17  seeking and then figure out what they want to do.

18         I'm sure that -- well, I'll just say, I can sense

19  that the Debtor through Mr. Pasternak who's an experienced

20  attorney is trying to work with everybody to achieve some

21  sort of resolution that's going to be workable for the

22  Debtor.  And so, I think I should let you all continue your

23  process of discovery work more and then see where we get.

24  Just doing a little mental math, it seems to me -- I want to

25  not waste everybody's time and make you run in and appear

Page 19

1   before me every two seconds, but I want to keep everyone's

2   minds focused.

3           So, at this point, I'm going to guess there won't

4   be a deposition this week because people are waiting for the

5   documents.  Does that sound right, Ms. Schwartz, but maybe

6   there will be next week?

7           MS. SCHWARTZ:  It looks like based on Mr. Stein's

8   schedule -- because we want to be able to, you know --

9           THE COURT:  Yeah.

10          MS. SCHWARTZ:  -- be efficient so that we're not

11  taking multiple depositions -- we're looking at the first

12  three days of the week of January 1.

13          THE COURT:  You said January.  That can't be

14  right.

15          MS. SCHWARTZ:  I mean, I'm sorry.  July 1.

16          THE COURT:  I do the exact same thing which is mix

17  up my months that start with the same letter.  Okay.  All

18  right.  So, if that's the case --

19          MS. SCHWARTZ:  We're looking at July 1, 2, or 3.

20          THE COURT:  From depos?

21          MS. SCHWARTZ:  That's assuming we get the

22  documents.

23          THE COURT:  Yeah.  Okay.  So --

24          MS. SCHWARTZ:  That's just of the deposition --

25  well, we would plan for the accountant first.  I mean, we

Page 20

```
 1    have to see what the accountant has to say.

 2              THE COURT:  Mr. Klinger, right.  Okay.  And then -

 3    -

 4              MR. KLINGER:  Excuse me, Your Honor.

 5              THE COURT:  Yes.

 6              MR. KLINGER:  Could I possibly bring the Court up

 7    and give you guys an update on -- everybody's been talking

 8    about the accountant but I'm standing right here.

 9              THE COURT:  Yes, I know, Mr. Klinger.  Hang on one

10    second.

11              MR. KLINGER:  Thank you.

12              THE COURT:  Let's hear from -- Mr. Klinger, I'll

13    tell you, I didn't want to call on you because I didn't want

14    to put you on the spot as a non-attorney with -- in an

15    unfair way, but is everyone -- unless anyone objects, I'm

16    happy from you.  Hearing no objection, yeah --

17              MR. KLINGER:  Thank you, Your Honor.  I've been

18    practicing as an accountant in bankruptcy court for over 30

19    years so I'm well aware of the situation.  I want to bring

20    everybody up to speed.

21              First, I'd like to remind all the parties,

22    including Ms. Schwartz, that I was retained post-petition,

23    well after this case was filed.  I had nothing to do with

24    the early onset of the case, with the schedules or any of

25    that.  I was brought in by Mr. Pasternak to solve the
```

Page 21

1   unsolvable which I basically going to a debtor in

2   possession, clean up their books, prepare the tax returns

3   that were outstanding so that they could confirm Chapter 11

4   case and that was my assignment here.

5          When I approached this Debtor, I found that their

6   books were in complete disregard.  They're QuickBooks didn't

7   match their tax returns that were filed.  The last tax

8   return that was filed was 2021.  I starting meeting with

9   their bookkeeper and Mr. Semaan and trying to untangle a

10  mess which is what I did.

11         My blush of this was to basically take all of

12  these payments and all of these disbursements and flush them

13  down the distribution account.  Then after speaking with the

14  Debtor and with the Debtor's attorneys, they had come to the

15  conclusion that they wanted to treat these as officer loans,

16  which is what we did on the first blush.

17         Since that time and since that hearing that I did

18  not appear at, we have delved much further into 2022.  It's

19  the only year that I've really gotten to.  And I've gone

20  into the very nitty gritty and cleaned up these books to the

21  best of our ability, to get everything really, really clean

22  and everything categorized in the right place.  I have since

23  had conversations with the Debtor.  I've had conversations

24  with the Debtor's personal attorneys.  I have conversations

25  with Mr. Pasternak.  I'm now at the point where I've come to

Page 22

1    a final balance sheet, and I believe that we're going to go

2    forward now with the 2022 tax preparation.

3           The '22 returns that Mr. Pasternak was in receipt

4    of that Ms. Schwartz saw were draft returns.  They were not

5    signed by me.  I'll remind the Court also that I do not sign

6    tax returns.  I sign as a preparer.  I do not sign as an

7    officer of a corporation.

8           MS. SCHWARTZ:  Nobody said you did.

9           MR. KLINGER:  I would be more than pleased to sign

10   as a preparer here when I'm done and I'm almost done.  Now,

11   what has taken so long?  Here's what's taken so long.  The

12   other side of these transactions I wanted to see.  I didn't

13   have any comfort here until I saw the other side of the

14   transactions which meant ordering bank statements for Mr.

15   Semaan's personal accounts and various stock brokerage

16   accounts, investment accounts, what have you.

17          I received one set of Chase statements on Friday

18   afternoon.  They will be put into the Dropbox after this

19   hearing.  I'm waiting for one more set of bank statements

20   from Chase.  After that, I believe that I've really

21   exhausted the matter and I'm ready to go forward in '23 --

22          THE COURT:  Okay.

23          MR. KLINGER:  -- which is going to be a whole

24   other set of ordering bank statements and what have you.

25          THE COURT:  Okay.  Got it.  And so, do you believe

Page 23

```
 1    you'll have the complete universe of '22 related statements

 2    when you get this last outstanding Chase statement?

 3              MR. KLINGER:  Yes, I do.

 4              THE COURT:  Okay.  Yes, we do.  And that's -- you

 5    expect that I assume --

 6              MR. KLINGER:  Momentarily.  I received one of them

 7    on Friday afternoon.

 8              THE COURT:  Right.  Okay.  I'm sure Chase is

 9    pretty --

10              MR. KLINGER:  They're coming by mail.  They

11    couldn't be produced on the (indiscernible) too old.

12              THE COURT:  Oh, I see.  All right.  So --

13              MS. SCHWARTZ:  Your Honor, can we just ask one

14    question?  Whether the 2022 tax returns were filed?

15              MR. KLINGER:  Nothing has been filed.

16              THE COURT:  Okay.  Those were simply draft

17    returns.  They were not signed by me.  They --

18              MS. SCHWARTZ:  We never -- yeah.  I understand,

19    Your Honor, why you didn't want to have Mr. Klinger -- I got

20    it.

21              THE COURT:  Yeah.  I mean, and so -- so, thank you

22    for the explanation, Mr. Klinger.  And let me say, I don't

23    think I've ever spoken to you, but I certainly have approved

24    your retention many times so you're a familiar figure to me.

25              MR. KLINGER:  Thank you.
```

1          THE COURT:  And so -- for what that's worth.  So,

2    here -- I'm trying to sort out what makes sense.  I think

3    what makes -- I think the best thing I can do is try to keep

4    us scheduling -- some scheduling discipline in order.  I

5    have no application but we have discovery that everyone is

6    providing I think voluntarily in light of the significance

7    of the situation plus backed of orders of the Court.

8          So, I think what I need to do is keep orders in

9    place just to keep people on track either with or without a

10   further conference.  And -- but I think what makes sense for

11   now is for me to order that documentary discovery or

12   productions by or on behalf of the Debtor, including

13   materials that Mr. Klinger's assembling will be complete by

14   -- I'll just say -- the end of this week.

15         Today is Monday.  I would -- ideally, it'll be

16   done earlier than that but by the end of this week because

17   that sounds possible.  It sounds like we're just down to one

18   outstanding batch of statements.  And then that any

19   interested parties, specifically including the U.S.

20   Trustee's Office and the U.S. Attorney's Office, can conduct

21   depositions which are to occur by July -- I'm looking to

22   pick a date -- July 1, 2, or 3 is Monday through Wednesday

23   and then the July 4th is a Thursday.

24         So, why don't we say by Wednesday, July 10,

25   depositions shall occur unless there's consent to push them

Page 25

1    out further by the governmental bodies that might be taking

2    the depositions.  I think that gives you scheduling time and

3    then I guess I'll ask you.  I'm trying to decide whether

4    it's worthwhile having a further conference to occur

5    sometime soon after July 10 or if I should let you all

6    request it when you're ready in light of what's happened.

7              Ms. Schwarz, what do you think?

8              MS. SCHWARTZ:  I think we should set a date, Your

9    Honor.

10             THE COURT:  Okay.  You know what, if anybody wants

11   a conference, I'm going to give it so I won't poll the room.

12   That's fine.  I will just say if you're in a situation where

13   it's -- where pushing it back a week would let you

14   accomplish something, that would make it productive in a way

15   that going forward immediately would not accomplish

16   anything, I'm open to that.  But for now, let me just say

17   that you all should contact Ms. Calderon for a date that's

18   after July 10 and before July 16.  And the reason for that

19   is I know I have about a four-day trip July -- where I

20   depart on July 16.

21             So, I'll get you in.  And then I think we'll take

22   it from there.  So, again, I'm just going to -- was speaking

23   slowly piecing it together so I'll say it faster.  So, to

24   recap, I'm going to enter a new order directing that

25   documentary discovery be complete this week, meaning -- I

Page 26

1    think that's June 14, on or before -- and that depositions -

2    - I guess I'll say if any of Mr. Klinger and Mr. Semaan will

3    complete by July 10.  And we're going to have a conference

4    between the 10th and the 15th to be scheduled.

5             Does that work for -- let me ask.  I'll stick with

6    Ms. Schwartz.  Does that work for you?

7             MS. SCHWARTZ:  It does, Your Honor.  I just want

8    to note one thing, though.  As I said, we're starting to

9    find in these documents other accounts.  Mr. Klinger didn't

10   mention the Ameritrade account which we saw that there were

11   certain bank statements trading from that.  And I also want

12   to be clear that when we said that -- I'll just deal with

13   the accountant at the time of the deposition.  I won't raise

14   anything here.

15            THE COURT:  Yeah.  I mean -- right.  I think --

16            MS. SCHWARTZ:  Yeah.  Yeah, yeah.

17            THE COURT:  That's sounds right.

18            MS. SCHWARTZ:  Yeah.  Right, right.

19            THE COURT:  Yeah.  I don't want to have a pre-

20   hearing.  You haven't had discovery.

21            MS. SCHWARTZ:  Oh, I understand, Your Honor.  I'm

22   not -- yeah.

23            THE COURT:  So, that's fine.

24            MS. SCHWARTZ:  I was just self-editing.

25            THE COURT:  Right.  I'm -- yes.  So, let's -- I

1    think let's stick with that sequence.  That, I think, let's

2    the information come out and then we'll take it from there.

3    Mr. Stein, does that work for you?

4              MR. STEIN:  It does, Your Honor.

5              THE COURT:  Okay.  And Mr. Pasternak?

6              MR. PASTERNAK:  Yes, Your Honor.

7              THE COURT:  Okay.  Great.  Okay.  So, I think I'm

8    going to enter a super short and sweet order, basically just

9    reciting those dates.  And it'll either include a date

10   certain that Ms. Calderon can generate or if not, we'll --

11   you can get in touch.

12             If you have any particular terrible dates between

13   the 11th and 15th, let me -- do you know right now?  Let me

14   know -- of July, we're talking about.

15             MS. SCHWARTZ:  I cannot do the 15th, Your Honor.

16             THE COURT:  Okay.  Everybody's looking.  Okay.

17   So, why don't we -- I think I'll just probably pick a date

18   sometime between the 11th and the 14th.

19             MR. STEIN:  No objection.

20             THE COURT:  Okay.  Great.  All right.  Thank you

21   very much.  You know, I think -- Mr. Semaan, I'm sure you

22   appreciate, this is a very serious situation.  The Court

23   takes it seriously.  Everyone does.  Mr. Klinger, I take

24   your point about the nature of your retention and your

25   efforts, but I think what we need to do just gather data and

Page 28

1    then figure out who wants to make what application.

2              Mr. Pasternak can mount a campaign to persuade

3    everyone to let the Debtor straighten things out and go

4    forward.  And folks will have those discussions not in my

5    presence and then I'll be ready to entertain whatever

6    applications come my way.  Okay?

7              MS. SCHWARTZ:  Judge --

8              THE COURT:  Yes.

9              MS. SCHWARTZ:  -- just so that I'm clear.  There's

10   nothing that would restrict any of the parties from filing

11   any motions in between now and then.

12             THE COURT:  Correct.  No.  All I'm doing to

13   setting dates and anybody who wants to file any motion at

14   any time is not precluded from doing so.  My somewhat

15   supposition is that you'll want to gather more information

16   first, but if not or there's an emergency, I'm always

17   available.  I raise my eyebrows in saying that.  I do have

18   some commitments in the next month that are going to have me

19   tied up.  But nevertheless, that's basically true.

20             All right.  So, thank you very much.  Anything

21   else we need to do today?

22             MR. PASTERNAK:  No, Your Honor.

23             THE COURT:  All right.  Thank you all.  Good luck

24   moving forward and we'll be touch shortly.  Take care.

25             MS. SCHWARTZ:  Thank you, Your Honor.

Page 29

1          MR. PASTERNAK:  Thank you, Your Honor

2          MR. KLINGER:  Thank you, Your Honor.

3          (Whereupon these proceedings were concluded at

4     10:37 AM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    *[signature]*

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  July 8, 2024